UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FREDDY ALEXANDER GAMEZ BETANCOURT,<br><br>Petitioner,<br><br>v.<br><br>FACILITY ADMINISTRATOR NORTHWEST IMMIGRATION AND CUSTOMS ENFORCEMENT PROCESSING CENTER et al.,<br><br>Respondents. | CASE NO. 2:26-cv-03904-JNW<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING RESPONDENTS TO SHOW CAUSE |

Petitioner Freddy Alexander Gamez Betancourt's habeas petition comes before the Court. Dkt. No. 1. The Court GRANTS the petition for the reasons below.

## 1. BACKGROUND

Gamez Betancourt is a citizen of Venezuela in immigration detention. On August 26, 2021, Immigration and Customs Enforcement ("ICE") arrested him near Del Rio, Texas, and the Government reinstated a prior removal order against him. Dkt. No. 15 ¶ 5. Three days later, it released him on an Order of Supervision ("OSUP"). ICE Deportation Officer ("DO") Daniel Gray states that on September 3,

2026, ICE issued a warrant for Gamez Betancourt's arrest. *Id.* ¶ 7. DO Gray says that ICE took Gamez Betancourt into custody when he reported to the ICE office. *Id.* ¶ 8. Gamez Betancourt says that he was arrested without prior notice or an opportunity to be heard when he reported for his routine appointment at the ICE office in Tukwila, Washington. Dkt. No. 1 ¶ 16.

The Government submitted a Notice of Release Revocation with its return, signed by ICE Assistant Field Office Director Allison Williams. Dkt. No. 16-3 at 2. It states that Gamez Betancourt's release was revoked on September 3, 2026, at 5:43 p.m., "pursuant to 8 C.F.R. § 241.4(l)" because "it is appropriate to enforce the removal order entered against [him] as ICE has the ability and means to effectuate [his] removal." *Id.* The Government asserts that ICE provided Gamez Betancourt with a post-arrest interview and explained the revocation. Dkt. No. 15 ¶ 8. Gamez Betancourt says "ICE did not give [him] a written notice explaining the reasons for revoking [his] release." Dkt. No. 1 ¶ 17.

ICE initially detained Gamez Betancourt at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, and he petitioned for a writ of habeas corpus while detained there. ICE then transferred him to the Florence Service Processing Center in Arizona. Dkt. No. 8 at 1. On October 17, ICE served him with a notice of imminent removal to Venezuela. Dkt. No. 15 ¶ 17. On October 23, 2026, the Court issued a temporary restraining order ("TRO") enjoining the Government from transferring Gamez Betancourt to any other facility, except back to NWIPC. Dkt. No. 13 at 5. The TRO expires on November 6, 2026. *Id.* at 6. On October 28, Gamez Betancourt notified the Court that ICE had transferred him to the Central

Arizona Florence Correctional Complex, which he says violated the Court's TRO. Dkt. No. 17 at 4. The Government has not responded to that filing.

## 2. LEGAL STANDARD

A federal court may grant a writ of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003). Because Gamez Betancourt is proceeding pro se, the Court construes his filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## 3. DISCUSSION

Gamez Betancourt asserts that ICE violated his due process rights when it revoked his OSUP and re-detained him because it did not provide any pre-deprivation process, and because it failed to comply with its own regulations. The Government responds first that his detention is lawful under 8 U.S.C. § 1231(a)(6) because it falls within the six-month period that *Zadvydas* treats as presumptively

reasonable. Dkt. No. 14 at 7–9. But Gamez Betancourt does not claim that his detention has become indefinite; he claims that ICE unlawfully revoked his release. The *Zadvydas* framework asks a different question—whether detention has become unreasonably prolonged. And "[t]hat the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025).

To determine what process the Government must provide before depriving a person of a constitutionally protected interest, courts apply the test set out in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). They weigh: (1) the private interest at stake; (2) the risk of erroneous deprivation through existing procedures and "the probable value, if any, of additional or substitute procedural safeguards"; and (3) the Government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335. Courts in this District and across the country have routinely held that people are entitled to notice and an opportunity to be heard before ICE revokes their release. *See Espinoza Palacios v. Hermosillo*, No. 2:26-cv-491-JNW, 2026 WL 686138, at *6 n.1 (W.D. Wash. Mar. 11, 2026) (collecting cases).

Considering the *Mathews* factors, the Court finds no reason to conclude that due process requires something different here. As for the first factor, Gamez Betancourt's interest in being free from physical detention by the Government is the "most elemental" interest the Due Process Clause protects. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Indeed, "[i]n this country, liberty is the norm and detention 'is

the carefully limited exception.'" *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1160 (D. Nev. 2025) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). The Court acknowledges that under Ninth Circuit precedent, Gamez Betancourt's liberty interest is diminished due to his final removal order. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). Even so, it remains an important interest that carries substantial weight.

The Court further finds that the risk of erroneous deprivation is high absent pre-deprivation process. The Government argues that it revoked Gamez Betancourt's OSUP under 8 C.F.R. § 241.13(i), which it contends provides sufficient, post-deprivation process to avoid errors. Under that regulation, "[t]he Service may revoke a[] [noncitizen's] release . . . if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). The regulation says that ICE will notify the noncitizen of the reasons for revocation and will conduct "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). At that interview, the noncitizen must be permitted to "submit any evidence or information that he or she believes shows there is no significant likelihood he or she [will] be removed in the reasonably foreseeable future[.]" 8 C.F.R. § 241.13(i)(3). The Government argues that "[b]ecause ICE complied with its regulations when re-detaining Petitioner, the

risk of a constitutionally significant[1] deprivation of Petitioner's liberty is minimal." Dkt. No. 14 at 11.

The first problem with the Government's argument is that ICE did *not* revoke Gamez Betancourt's release under 8 C.F.R. § 241.13(i), as it claims, and nothing in the record shows that any ICE official found that "on account of changed circumstances," there was "a significant likelihood that [Gamez Betancourt] [could] be removed in the reasonably foreseeable future" under 8 C.F.R. § 241.13(i)(2). Rather, Assistant Field Office Director Williams revoked Gamez Betancourt's OSUP under 8 C.F.R. § 241.4(l) on a finding that it was "appropriate" to enforce his removal order, and that ICE had the "ability and means" to do so. Dkt. No. 16-3 (Notice of Revocation of Release). ICE's record of its interactions with Gamez Betancourt on September 3, identifies no changed circumstances either. *See* Dkt. No. 16-1 at 3. Instead, that record shows that a DO arrested Gamez Betancourt after running "checks" and learning that he had "no active status in the United States," which was just as true when ICE released him in 2021. *Id.* The Government's argument is thus a post hoc rationalization that contradicts the record, and the Court rejects it. *See Abreu-Guerrero v. Chestnut*, No. 1:26-cv-06959-DAD-SCR, 2026 WL 2664618, at *3 (E.D. Cal. Sept. 10, 2026) ("District courts have consistently granted habeas petitions where the agency engaged in similar *post hoc* rationalizations meant to justify an otherwise unlawful detention."); *cf. Dep't of*

[1] As the Constitution is applicable and thus significant to every deprivation of liberty, the Court assumes the Government means that it does not believe Gamez Betancourt can show a constitutional violation.

*Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 24 (2020) ("[W]hen so much is at stake," the Government "must defend its actions based on the reasons it gave when it acted," rather than "cutting corners" by "rely[ing] upon reasons absent from its original decision.").

Additionally, the Court agrees with Gamez Betancourt that ICE failed to follow its own regulations when it revoked his release. As explained above, ICE revoked his release under 8 C.F.R. § 241.4(l). That regulation authorizes two agency officials to revoke release: (1) the Executive Associate Commissioner of the Service, and (2) a district director, but only when "the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." 8 C.F.R. § 241.4(l)(2); *Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025). Here, an Assistant Field Office Director revoked release, and nothing in the record shows that the Executive Associate Commissioner made the decision or that anyone found that referral to that official was impractical. Dkt. No. 16-3 at 2. The Government offers no argument on this point beyond asserting that ICE complied with § 241.4(l). Dkt. No. 14 at 11. That does not satisfy the regulation. *See Santamaria Orellana*, 2025 WL 2444087, at *6 (Revocation of release by local officers violated 8 C.F.R. § 241.4(l)'s "requirement that such a decision must be made either by an 'Executive Associate Commissioner' or by a 'district director.'").

Finally, ICE documented that Gamez Betancourt was "given an informal interview" on September 3, but the interview form, which was to record his "oral response regarding the reasons for revocation," records nothing. Dkt. No. 16-3 at 4.

Even assuming for the sake of argument that Gamez Betancourt received an interview, he would not have had a fair opportunity to present evidence at it, as any interview would have occurred in the short window between his detention at around 5:30 p.m. and his transfer to NWIPC later that same evening. Nor could he have meaningfully challenged the revocation because the notice offered only a one-line conclusion that ICE has the "ability and means" to remove him. Dkt. No. 16-3; *see Santamaria Orellana*, 2025 WL 2444087, at *8 ("[N]o one—not the Court, not [petitioner], and not even Respondents—knows with any degree of certainty what legal and factual basis was relied upon in making the determination, which hinders any meaningful challenge to the decision."). Under these facts, the Court finds a high risk of erroneous deprivation absent additional procedural safeguards—namely, notice and a pre-deprivation hearing.

On the third *Mathews* factor, the Court finds that "the Government's interest in re-detaining non-citizens previously released without a hearing is low" for the same reasons it has provided to the Government many times. *See, e.g., Espinoza Palacios*, 2026 WL 686138, at *8; *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1203 (W.D. Wash. 2025); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).

Thus, applying the *Mathews* factors, the Court finds that Gamez Betancourt has a protected liberty interest in his continued release from custody, and that due process requires pre-deprivation notice and a hearing before re-detention.

Separately, the Court finds that ICE violated Gamez Betancourt's due process rights by failing to comply with its regulations when revoking his OSUP

and re-detaining him. Courts across the country have made similar findings when analyzing regulations governing OSUP revocation. *See, e.g., Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1165–66 (S.D. Cal. 2025); *Santamaria Orellana*, 2025 WL 2444087, at *8; *Grigorian v. Bondi*, No. 25-cv-22914-RAR, 2025 WL 2604573, at *6 (S.D. Fla. Sept. 9, 2025) ("Although [the petitioner's release] was subject to § 241.4(l) and not § 241.13(i), the Court nevertheless finds that ICE failed to provide [him] with a meaningful opportunity to contest the revocation of his [order of supervision] through an informal interview [in violation of] both ICE's own regulations and the Due Process Clause of the Fifth Amendment.").

As for the remedy, the Court finds immediate release appropriate because, as other courts have found, when a petitioner's detention is "unlawful from its inception" that "typically requires immediate release." *Lopez Esteban v. Warden-Facility Admin. of Nw. Processing Ctr.,* No. 2:26-cv-02548-JHC, 2026 WL 2686824, at *6 (W.D. Wash. Sept. 14, 2026) (collecting cases); *Rodriguez Rodriguez*, 2026 WL 2641448, at *3 (finding that when "detention has been unlawful from the outset . . .[,] [t]he most appropriate remedy for this violation is to return Petitioner to the previous status quo by releasing him from detention."). This order does not prevent the Government from enforcing Gamez Betancourt's removal order; it requires only that the Government provide due process before detaining him again.

Gamez Betancourt also requests injunctive relief, and the Court finds that such relief is warranted. See *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). First, Gamez Betancourt has suffered irreparable harm and that harm is likely to continue or recur without injunctive relief. For months, courts in this

District "have repeatedly found that the Government's conduct in revoking release and re-detaining non-citizens without pre-deprivation process is unconstitutional." *Espinoza Palacios*, 2026 WL 686138, at *10. Nevertheless, Respondents have continued the practice. Accordingly, injunctive relief is necessary to prevent further constitutional violations as to Gamez Betancourt. Second, the Court finds that monetary damages are inadequate to remedy the unconstitutional deprivation of his liberty. Third, the Court finds that the Government will not face undue hardship if required to provide pre-deprivation process before detaining him. Finally, "the public interest favors compliance with the law." *Id.*

Lastly, Gamez Betancourt asks the Court to return him to NWIPC. Dkt. No. 17 at 4. The request is unopposed, as the Government did not respond to the TRO motion. *See* LCR 7(b)(2) ("[I]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit."). And for good reason—release alone would not fully remedy Gamez Betancourt's unlawful detention. The Government took him into custody in Tukwila, near his home in Renton, Washington, and then moved him to Arizona. So the Government should have to return him, as "the purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (citation modified); *see also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (citation modified); *see also, e.g.*,

*Rodriguez v. Scott*, 2026 WL 2823436, at *7 (W.D. Wash. Sept. 21, 2026) ("[I]t is appropriate to restore [the immigration habeas petitioner] to his status before his unlawful detention occurred, and therefore orders that the Government facilitate [his] return to St. Helens, Oregon"); *Abdikarim v. Scott*, No. C26-2731-KKE, 2026 WL 2409268, at *4 (W.D. Wash. Aug. 18, 2026) (ordering the government to return immigration habeas petitioner to Minnesota); *SJosue I.C.A. v. Lyons*, No. 1:25-cv-01542-SKO (HC), 2025 WL 3496432, at *6 (E.D. Cal. Dec. 5, 2025) (ordering Government to return immigration habeas petitioner to Maryland).

The Court thus GRANTS the request—the Government must either release Gamez Betancourt from NWIPC or release him in Arizona and pay for his travel home to Renton.

## 4. CONCLUSION

Accordingly, the Court ORDERS:

1. Gamez Betancourt's habeas petition is GRANTED. Dkt. No. 1.
2. Gamez Betancourt's TRO motion is GRANTED IN PART. Dkt. No. 17. The Court GRANTS the request to add the Facility Administrator of Central Arizona Florence Correctional Complex as a Respondent and DIRECTS the Clerk of the Court to do so. The address provided for the new Respondent is: Central Arizona Florence Correctional Complex, 1155 N. Pinal Parkway, Florence, AZ 85132. *See* Dkt. No. 17 at 4.
3. Within FORTY EIGHT (48) HOURS of this order, Respondents MUST EITHER: (a) transfer Gamez Betancourt to NWIPC in Tacoma, Washington, and RELEASE him from that facility; or (b) RELEASE

Gamez Betancourt from detention in Arizona and arrange and pay for his travel to his home in Renton, Washington, so that he is scheduled to arrive there within that FORTY-EIGHT (48) HOUR period. Upon release, Gamez Betancourt shall be subject to his most recent, pre-detention conditions of release. Respondents must return all identification documents and personal belongings taken from Gamez Betancourt at the time of apprehension or during detention. Within SEVENTY-TWO (72) HOURS of this order, Respondents must file a status report confirming their compliance and stating which option they chose and the date, time, and place of Gamez Betancourt's release.

4. Respondents are PERMANENTLY ENJOINED from re-detaining Gamez Betancourt absent adequate written notice and a pre-deprivation hearing, consistent with due process, before an immigration court to determine whether re-detention is appropriate.
5. Respondents are FURTHER ORDERED to show cause by November 13, 2026, why they should not be sanctioned for violating this Court's temporary restraining order at Dkt. No. 13.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

**Gamez Betancourt's address was recently updated due to his transfer; at the time of this order, his last known address was the address provided in his sealed filing at Dkt. No. 17.**

Dated this 6th day of November, 2026.

Jamal N. Whitehead
United States District Judge